UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

PIERRE WATSON,                      )
                                    )
            Petitioner,             )
                                    )
      v.                            )        Case No.  4:19-cv-01545-AGF
                                    )
UNITED STATES OF AMERICA,           )
                                    )
            Respondent.             )

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Pierre Watson's motion filed under

28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  Watson and two co-

defendants were charged with multiple offenses related to a counterfeiting scheme.  On

November 7, 2016, Watson entered into an open plea and pled guilty to the following

charges: conspiracy to defraud in violation of 18 U.S.C. § 371 (Count One); bank fraud in

violation of 18 U.S.C. § 1344 (Count Two); and passing counterfeit securities in violation

of 18 U.S.C. § 513(a) (Count Nine).  However, Watson's plea to Count Nine was later

withdrawn and dismissed on the government's motion.

Following a bench trial also held on November 7, 2016, this Court found Watson

guilty of three additional charges: passing counterfeit securities in violation of 18 U.S.C.

§ 513(a) (Count Eight); possessing an implement suitable for making counterfeit

securities in violation of 18 U.S.C. § 513(b) (Count Eleven); and tampering with a

witness in violation of 18 U.S.C. § 1512(b)(1) (Count Twelve).[1]  The Court sentenced Watson to 60 months' imprisonment on Count One and 84 months' imprisonment on Counts Two, Eight, Eleven, and Twelve, all such sentences to run concurrently.

In his pro se motion to vacate and set aside his conviction and sentence, Watson asserts numerous claims of ineffective assistance of counsel and prosecutorial misconduct.  The Court scheduled an evidentiary hearing and appointed new counsel to represent Watson.  On March 10, 2021, the Court held the evidentiary hearing on Watson's claims, at which Watson and the attorney who represented him in the underlying criminal case, Talmage E. Newton, IV, testified.  Based on the entire record, and having had the opportunity to observe and evaluate the demeanor of the witnesses at the hearing, the Court will now deny Watson's motion.

## **BACKGROUND**

**Criminal Investigation**

The events leading up to the filing of criminal charges in this case were summarized by the United States Court of Appeals for the Eighth Circuit on direct appeal as follows:

> On August 30, 2014, Maryland Heights, Missouri, police officers approached a stopped car and found Watson in the driver's seat. Watson was arrested on several outstanding warrants. An inventory search of the vehicle revealed the following items: four counterfeit payroll checks; a business check in the name of an insurance company; two pieces of perforated check stock; copies of a deposit ticket containing images of two checks drawn on a Bank of America account belonging to the Law Offices of J.P.; two

---

[1]     This Court granted the government's motion to dismiss Counts Four and Five before trial; and Watson was not charged in the remaining counts (Counts Three, Six, Seven, and Ten).

photocopies of checks drawn on an Enterprise Bank and Trust account belonging to the law firm, Sher & Shabsin, P.C.; and a social security card that was not issued to Watson.

The investigators discovered that from August 10 through August 19, 2014, the conspirators successfully passed six counterfeit checks drawn on the Enterprise Bank account of Sher & Shabsin. One of these checks, written for $465.90, was deposited into an account at U.S. Bank by co-defendant Shontell Hill.

The counterfeit Sher & Shabsin checks were similar, but not identical, to the two photocopied Sher & Shabsin checks seized during the inventory search. The name of the bank, the bank routing number, and the five digit length of the check numbers matched Sher & Shabsin's account. On the counterfeit checks, a transposed letter changed "Sher & Shabsin" to "Sher & Shasbin." The counterfeit checks also omitted the last digit of the law firm's account number, modified the number of signature lines, inserted a law firm logo, removed Enterprise Bank's logo, and included language that the check was "VOID AFTER 90 DAYS" and "Do Not Cash If Amount Exceeds $10,000.00."

*United States v. Watson*, 883 F.3d 1033, 1035–36 (8th Cir. 2018).

**Original and Superseding Indictments**

As a result of the investigation, a federal grand jury returned an indictment on September 23, 2015 ("Original Indictment")[2] charging Watson and a co-defendant, Darisha Taylor, with the following:

| COUNT[3] | DATE | CHARGE | FACTS |
|---|---|---|---|
| One | August 11, 2014 | 18 U.S.C. § 1028A, Aggravated Identity Theft | Watson and Taylor used the name of "J.F." during the commission of the crime of bank fraud |

---

[2]     The Original Indictment was returned by the grand jury to United States District Judge Catherine D. Perry.

[3]     Watson was not charged in Counts Two or Three.

| Four | August 30, 2014 | 18 U.S.C. § 513(b), Possessing Counterfeit Implements | Watson possessed a template of a business check in the name of Tokio Marine Specialty Insurance Co. |
| Five | August 30, 2014 | 18 U.S.C. § 1028A, Aggravated Identity Theft | Watson possessed the name of "J.F." during the commission of the crime of bank fraud |

*United States v. Watson*, Case No. 4:15CR00440 AGF, ECF No. 1 (E.D. Mo. Sept. 23, 2015).[4]

Newton was appointed to represent Watson, and Newton entered his appearance on October 1, 2015.  On October 2, 2015, the government disclosed evidence pursuant to Federal Rule of Criminal Procedure 16.  Crim. ECF No. 14.  The evidence included, among other things, the items seized from Watson's vehicle on August 30, 2014; two Maryland Heights police reports; a University City police report; a St. Louis County police report; records from Sher & Shabsin; and a photographic line-up in which Watson was identified as the individual who provided counterfeit checks. *Id.*

On January 20, 2016, the government filed a superseding indictment ("First Superseding Indictment"),[5] containing substantially similar charges as the Original Indictment, but replacing the name "J.F." with "M.S.," as follows:

---

[4]    All references to filings made in the underlying criminal case will be identified hereafter as "Crim. ECF No."

[5]    The First Superseding Indictment was returned by the grand jury to United States District Judge Ronnie L. White.

| COUNT[6] | DATE | CHARGE | FACTS |
|---|---|---|---|
| One | August 11, 2014 | 18 U.S.C. § 1028A, Aggravated Identity Theft | Watson and Taylor used the name of "M.S." during the commission of the crime of bank fraud |
| Four | August 30, 2014 | 18 U.S.C. § 513(b), Possessing Counterfeit Implements | Watson possessed a template of a business check in the name of Tokio Marine Specialty Insurance Co. |
| Five | August 30, 2014 | 18 U.S.C. § 1028A, Aggravated Identity Theft | Watson possessed the name of "M.S." during the commission of the crime of bank fraud |

Crim. ECF No. 51.

On January 26, 2016, co-Defendant Taylor pled guilty to the charges against her, and thereafter, on January 27, 2016, the government filed a second superseding indictment ("Second Superseding Indictment")[7] against Watson only, charging him with the following:

| COUNT | DATE | CHARGE | FACTS |
|---|---|---|---|
| One | August 11, 2014 | 18 U.S.C. § 1028A, Aggravated Identity Theft | Watson and Taylor used the name of "M.S." during the commission of the crime of bank fraud |
| Two | August 11, 2014 | 18 U.S.C. § 513(a), Passing Counterfeit Securities | Watson and Taylor passed a counterfeited check in the amount of $869.50 drawn on an Enterprise Bank & Trust account in |

---

[6]    Watson was not charged in Counts Two or Three.

[7]    The Second Superseding Indictment was returned by the federal grand jury to Chief United States District Judge Rodney W. Sippel

5

| | | | the name of Sher & Shabsin, P.C. |
|---|---|---|---|
| Three | August 13, 2014 | 18 U.S.C. § 513(a), Passing Counterfeit Securities | Watson and an individual named Shontell Hill ("S. Hill") passed a counterfeited check in the amount of $465.90 drawn on an Enterprise Bank & Trust account in the name of Sher & Shabsin, P.C. |
| Four | August 18, 2014 | 18 U.S.C. § 513(a), Passing Counterfeit Securities | Watson, Taylor, and an individual named Courtney Lowe passed a counterfeited check in the amount of $489.75 drawn on a Wells Fargo Account in the name of Restoration Temple Child Development Center |
| Five | August 30, 2014 | 18 U.S.C. § 513(b), Possessing Counterfeit Implements | Watson possessed a template of a business check in the name of Tokio Marine Specialty Insurance Co. |
| Six | August 30, 2014 | 18 U.S.C. § 1028A, Aggravated Identity Theft | Watson possessed the name of "M.S." during the commission of the crime of bank fraud |
| Seven | November 4, 2015 | 18 U.S.C. § 1512(b)(1), Witness Tampering | Watson attempted to persuade Taylor to complete a fraudulent affidavit in the charged action. |

Crim. ECF No. 65.

Watson, through defense counsel, moved to dismiss the charge of possession of

the Tokio Marine check template set forth in Count Five of the Second Superseding

Indictment on the ground that 18 U.S.C. § 513(b) was facially invalid in that it did not

include an express interstate commerce nexus, and thus exceeded Congress's authority

6

under the Commerce Clause.[8]  Crim. ECF No. 73.  This Court denied Watson's motion to dismiss on May 11, 2016.  Crim. ECF No. 99.

After continued investigation into the activities of Watson and others, the government filed a third and final superseding indictment ("Final Superseding Indictment")[9] on May 18, 2016, charging Watson, S. Hill, and Desiree Hill ("D. Hill")[10] with the following:

| COUNT[11] | DATE | CHARGE | FACTS |
|---|---|---|---|
| One | July 9, 2014 through May 22, 2015 | 18 U.S.C. § 371, Conspiracy to Defraud | Watson, S. Hill, D. Hill, Jason Reese, Taylor, Lowe, and others engaged in a conspiracy to commit the offenses of bank fraud, identity theft, aggravated identity theft, and passing counterfeit securities between July 9, 2014 and May 22, 2015 |
| Two | August 14, 2014 | 18 U.S.C. § 1344, Bank Fraud | To further their bank fraud scheme, S. Hill withdrew $200.00 from her U.S. Bank account after depositing a counterfeit check drawn on the Enterprise Bank |

---

[8]     Defense counsel had similarly moved to dismiss the charge from the previous indictments, and he preserved the motion for ruling with respect to the Second Superseding Indictment.

[9]     The Final Superseding Indictment was returned by the federal grand jury to Chief United States District Judge Ronnie L. White.

[10]    Desiree Hill is the daughter of Shontell Hill.

[11]    Watson was not charged in Counts Three, Six, Seven, or Ten.

|  |  |  | & Trust account of Sher & Shabsin P.C. in the amount of $465.90 that was provided by Watson |
|---|---|---|---|
| Four | August 11, 2014 | 18 U.S.C. § 1028A, Aggravated Identity Theft | Watson used the name of "M.S." during the commission of the crime of bank fraud |
| Five | August 14, 2014 | 18 U.S.C. § 1028A, Aggravated Identity Theft | Watson used the name of "M.S." during the commission of the crime of bank fraud |
| Eight | August 14, 2014 | 18 U.S.C. § 513(a), Passing Counterfeit Securities | Watson and S. Hill passed a counterfeited check in the amount of $465.90 drawn on an Enterprise Bank & Trust account in the name of Sher & Shabsin, P.C |
| Nine | August 18, 2014 | 18 U.S.C. § 513(a), Passing Counterfeit Securities | Watson and Taylor passed a counterfeited check in the amount of $489.75 drawn on a Wells Fargo N.A. account in the name of Restoration Temple Child Development Center |
| Eleven | August 30, 2014 | 18 U.S.C. § 513(b), Possessing Counterfeit Implements | Watson possessed a template of a business check in the name of Sher & Shabsin, P.C. with the intent that it be so used to create counterfeit securities |
| Twelve | November 4, 2015 | 18 U.S.C. § 1512(b)(1), Tampering with a Witness | Watson and S. Hill attempted to persuade Taylor to complete a fraudulent affidavit in the charged action. |

Crim. ECF No. 100.

8

**Discovery and Pretrial Motions**

On May 24, 2016, the government filed another discovery letter setting forth evidence that supported the Final Superseding Indictment.  Crim. ECF No. 126.  The documents referenced items that had been previously disclosed in the intervening time period, as well as tapes of jail telephone calls, U.S. Bank records and surveillance photos relating to the accounts of S. Hill and D. Hill, and a St. Louis County police report detailing the U.S. Bank fraud.  *Id.*

On June 14, 2016, Watson's counsel, Newton, and S. Hill's counsel filed independent motions to dismiss.  Newton, on behalf of Watson, again moved to dismiss Count 11, which charged the possession of a counterfeit implement, on the ground that the statute exceeded Congress's authority under the Commerce Clause (Crim. ECF No. 130).  He also sought to sever Watson's trial from that of his co-defendants (Crim. ECF No. 131) and to sever Count 12 (witness tampering) from the remaining counts (Crim. ECF No. 132).  Watson also filed a filed a pro se motion to dismiss the indictment based on a perceived Speedy Trial Act violation.  Crim. ECF No. 143.  The Magistrate Judge held a motion hearing on June 24, 2016, where Watson, with counsel present, withdrew his pro se motion.  At that hearing, the Magistrate Judge held an inquiry and determined that Watson was fully satisfied with his attorney's performance to date.  *See* Crim. ECF No. 178.  Watson's counsel thereafter requested, and was given leave, to file a motion to dismiss out of time in order to assert Watson's Speedy Trial Act claim; counsel filed that motion on July 1, 2016.  Crim. ECF No. 171.  On August 5, 2016, after a hearing, the Magistrate Judge recommended that the Court deny Watson's motions (Crim. ECF No.

9

178), and October 18, 2016, this Court on *de novo* review agreed and denied Watson's motions.  Crim. ECF No. 215.

On June 14, 2016, S. Hill's counsel sought to dismiss the indictment on the ground of vindictive prosecution, arguing that the prosecutor was retaliating against S. Hill for refusing to testify against Watson.  Crim. ECF No. 133.  On August 5, 2016, after a hearing, the Magistrate Judge recommended that the Court deny S. Hill's motions (Crim. ECF No. 177), and October 28, 2016, this Court on *de novo* review agreed and denied S. Hill's motions.  Crim. ECF No. 227.  The Court held that neither the record nor the sequence of events in this case, including the timing and allegations of the various indictments,  supported S. Hill's allegations that the government acted with improper motive.  *See* Crim. ECF No. 227.

Meanwhile, the government had begun investigating allegations that Watson engaged in additional criminal activity while incarcerated pretrial in his criminal case before the undersigned.  On August 3, 2016, a federal grand jury returned an indictment to Judge Perry charging Watson with conspiracy to commit bank fraud and wire fraud, and substantive violations of bank fraud and aggravated identity theft; a new criminal case related to these charges was opened  before United States District Judge John A. Ross.  Criminal Case No. 4:16CR00336 JAR.  Newton was again appointed to represent Watson, and he represented Watson throughout that criminal case and appeal.

On October 31, 2016, the government moved to dismiss Counts Four and Five of the Final Superseding Indictment (aggravated identity theft).  Crim. ECF No. 234.  The government asserted that, during preparations for trial, it discovered that the name used

on the counterfeit checks giving rise to the charges was a misspelling of the victim's name due to a transposed letter.  The government believed that, because the misspelled name could not be used to properly identify the victim, the counterfeit checks could not give rise to an aggravated identity theft conviction.  This Court granted the government's motion on November 1, 2016.  Crim. ECF No. 249.

## Guilty Plea and Bench Trial

Watson's criminal case was set for a bench trial on November 7, 2016, Watson having waived his right to a jury trial.  The government filed its exhibit and witness lists on November 4, 2016. Crim. ECF  No. 263 & 264.

On the morning of trial on November 7, 2016, Watson's counsel informed this Court that Watson wished to change his plea to Counts One (conspiracy to defraud), Two (bank fraud on U.S. Bank), and Nine (passing counterfeit check on a Wells Fargo N.A. account in the name of Restoration Temple Child Development Center) of the Final Superseding Indictment; to enter an "open plea" to those Counts; and to proceed to a bench trial on the remaining Counts Eight (passing counterfeit security on an Enterprise Bank & Trust account in the name of Sher & Shabsin, P.C), Eleven (possessing counterfeit implement in the form of a template of a business check in the name of Sher & Shabsin, P.C.), and Twelve (witness tampering).

This Court thus held a plea colloquy with respect to Counts One, Two, and Nine, and questioned Watson under oath.  During the colloquy, Watson represented that he received a copy of the Final Superseding Indictment; that he fully discussed the charges and the case with his attorney, Newton; that he reviewed the evidence the government

11

had against him; that he understood the current pending charges; that he had enough time to discuss his case and his plea with his attorney; that he understood the rights he was giving up by entering a plea; that he was entering the plea of his own free will; that he was satisfied with the representation he received from his attorney; and that there was nothing Watson wanted his attorney to do for him that the attorney had not done in representing him.

Because the parties had not entered a plea agreement or agreed to a stipulation of the factual basis for the plea, Watson provided the Court with a factual basis in his own words for Counts One, Two, and Nine.  Watson admitted during the plea colloquy that he and his fellow conspirators engaged in a scheme to defraud U.S. Bank, Enterprise Bank, and Sher & Shabsin, P.C.  He further admitted that, as a part of the scheme, he obtained fraudulent checks that were either made by himself or given to him by another member of the conspiracy to give to S. Hill for deposit in S. Hill's bank account.  The government then represented that it was satisfied that Watson had adequately testified as to the factual basis for these counts.  Based on Watson's representations, the Court accepted Watson's guilty plea to Counts One, Two, and Nine as knowing, intelligent, and voluntary.

Later that day, the Court began the bench trial on Counts Eight, Eleven, and Twelve.  In connection with the bench trial, the parties entered into a stipulation regarding certain facts underlying Counts Eight and Eleven.  Watson's counsel represented that the sole issues for trial with respect to those counts were the following legal issues: with respect to Count Eight (passing counterfeit securities), whether the check at issue qualified as a counterfeit security under the relevant statute in light of the

12

misspelling of the victim's name, and with respect to Count Eleven (possessing counterfeit making implement), whether the photocopied checks could qualify as a counterfeit making "implement" under the relevant statute.  The parties did not enter into any stipulations of fact with respect to Count Twelve (witness tampering).  *See* Crim. ECF No. 274 at 49-56.

The government also presented two witnesses during the bench trial.  The first witness, Michael Shabsin, president and partner of Sher & Shabsin, P.C., testified regarding the counterfeit checks that had been presented for payment on his law firm's account.  *Id.* at 56-63.  On cross examination, Watson's counsel elicited testimony from Shabsin that the counterfeit check at issue in Count Eight differed in several respects from the law firm's legitimate business checks, including that the counterfeit check slightly misspelled the law firm's name, omitted the last digit of the law firm's account number, modified the number of signature lines, inserted a law firm logo, removed a bank logo, and included language that the check was "VOID AFTER 90 DAYS" and "Do Not Cash If Amount Exceeds $10,000.00."  *Id.* at 63-71.

The second government witness was Taylor.  She testified that Watson recruited her to cash counterfeit checks and split the proceeds with him, and that while Watson was in pretrial detention in November of 2014, Watson called Taylor on the telephone and asked her to file a false affidavit in this Court regarding Watson's criminal case. Watson's counsel did not present any witnesses.  A transcript of this call and a call log from the jail was also introduced into evidence.

**Post-Trial Motions**

On November 18, 2016, Watson, through attorney Newton, moved for a judgment of acquittal on Counts Eight, Eleven, and Twelve, on the ground that the government failed to prove the requisite elements of these charges beyond a reasonable doubt. Regarding Count Eight (passing counterfeit securities), Watson argued that the check at issue was not a "counterfeit security . . . of an organization" because of the misspelling of the payor law firm's name.  With respect to Count Eleven (possessing counterfeit making implement), Watson argued that a photocopy of two legitimate checks was not an "implement" designed or particularly suited for making a counterfeit or forged security, as required by the relevant statute, particularly because the counterfeited checks actually passed by Watson and others differed in several respects from the photocopies.  Finally, regarding Count Twelve (witness tampering), Watson argued that merely asking a witness to lie in an affidavit does not constitute witness tampering under the relevant statute.  Crim. ECF No. 275.

On January 24, 2017, the government moved to voluntarily dismiss Count Nine (passing counterfeit check drawn on a Wells Fargo N.A. Account in the name of "Restoration Temple Child Development Center"), to which Watson had previously pled guilty, because the government believed it had failed to obtain allocution of all of the elements of the offense during the change of plea.  Crim. ECF No. 292.  As a result, Watson moved to withdraw his guilty plea to Count Nine.

On January 25, 2017, the Court granted both motions regarding Count Nine, and Count Nine was dismissed.  Crim. ECF No. 295.  The same day, January 25, 2017, this

14

Court denied Watson's motion for judgment of acquittal on Counts Eight, Eleven, and Twelve, and found that the government had proved Watson's guilt on these counts beyond a reasonable doubt.  Crim. ECF No. 296.

On May 23, 2017, less than two weeks before his sentencing hearing, Watson, through attorney Newton, filed a motion to withdraw his guilty plea to Count Two (bank fraud) and a portion of Count One (conspiracy).  Crim. ECF No. 352.  Watson asserted that, after additional post-trial review of the transcript, witness statements, and discovery materials, Watson realized he was confused about which check formed the basis of Count Two.  Watson asserted that he was factually innocent of the charges involving the Sher & Shabsin check at issue in Count Two and in a portion of Count One, because he was incarcerated on a different matter at the time S. Hill cashed that check and therefore could not have given the check to S. Hill.  Watson asserted that he had been unable to evaluate the evidence against him at the time of his plea.

On June 5, 2017, the Court held a hearing on Watson's motion to withdraw his plea.  At that hearing, Watson again confirmed that he was satisfied with his attorney, that there was no question he had that his attorney had not answered, and that there was nothing he asked his attorney to do that the attorney had not done.  Crim. ECF No. 360.  Watson then testified that he was confused about which check was at issue in Count Two because he had not seen the particular Sher & Shabsin check until trial.  On cross-examination, Watson admitted that he had seen the check when he reviewed the original discovery more than a year before trial, but that the account number on the check had been redacted at that time.

This Court then reviewed the transcript of the change-of -plea hearing and pointed to evidence in the record that established Watson clearly understood the consequences of entering guilty pleas and knowingly admitted to a detailed factual basis in support of Counts One and Two, including that Watson passed counterfeit Sher & Shabsin checks drawn on the law firm's Enterprise Bank account—the same law firm and bank contained in the factual allegations of Counts One and Two.   The Court held:

> [I]t appears . . . from a full review of the record that the defendant in this case made very deliberate and strategic decisions about how to proceed with the case overall based upon the particular checks that were at issue in this case. And after planning initially to proceed to trial, the defendant made the deliberate decision to plead guilty to Counts 1, 2, and 9 and to proceed to trial with respect to Counts 8, 11, and 12. And essentially with respect to Counts 8 and 11, this defendant also chose to depend upon legal arguments, which . . . were not successful.

Crim. ECF No. 360 at 28-29.  The Court also held that Watson had admitted and there was no reason to doubt that the particular check at issue in Count Two was provided to him as part of the original discovery and that any redaction in the account number at that time was irrelevant.  Further, the Court held that Watson's claim that he was incarcerated during the time that S. Hill cashed the check at issue did not undermine Watson's guilt because Watson could have arranged for someone else to provide the check to S. Hill.  In short, the Court held that Watson's new and self-serving claim that he was confused about which checks corresponded to Counts One and Two was directly contradicted by his statements during his plea colloquy.  The Court thus denied Watson's motion to withdraw his guilty plea to those counts.

**Sentencing**

The Court held a sentencing hearing on June 16, 2017.  At the beginning of that hearing, Watson represented that he had received and reviewed the final presentence investigation report ("PSR") prepared by the United States Probation Office.  Watson, through attorney Newton, asserted numerous objections to the PSR, including objecting the imposition of various sentencing enhancements as recommended by the PSR, such as enhancements based on the number of people involved in the conspiracy; Watson's role in the offense; the loss amount; and the trafficking of an access device, namely, a debit card, used in connection with fraudulent transactions.  The government responded to Watson's objections and also presented the testimony of a witness, Special Agent Scowcroft, in support of the government's request for the sentencing enhancements.

Based on the entire record, including the evidence presented at the sentencing hearing, the Court overruled Watson's objections to the PSR.  The Court also granted in part the government's motion for an upward variance from the United States Sentencing Guidelines, which Watson, through counsel, opposed.  While the government sought an upward variance for a total of 120 months' incarceration, the Court only sentenced Watson to 84 months' incarceration.[12]  The Court noted that, even if it had granted some of Watson's objections to the PSR, such as the intended loss amount, the Court still

---

[12]     The Court sentenced Watson to 60 months' imprisonment on Count One and 84 months' imprisonment on Counts Two, Eight, Eleven, and Twelve, all such sentences to run concurrently.

would have imposed a sentence of 84 months' incarceration.[13]  Crim. ECF No. 374 at 72.

The Court held that the sentence would be consecutive to any sentence imposed in

Watson's other federal criminal cases pending in the Eastern District of Missouri.  The

also ordered Watson to make restitution in the amount of $9,045.40 to his victims.

**Direct Appeal**

Watson, through attorney Newton, filed a direct appeal on June 29, 2017.  Crim.

ECF No. 369.  The United States Court of Appeals for the Eighth Circuit appointed

Newton to continue representing Watson through the appeal.  Crim. ECF No. 372.  The

appeal challenged: (1) the sufficiency of evidence to support the conviction of Watson's

possession of a counterfeit-making template charged in Count Eleven; (2) this Court's

decision to direct Watson's sentence to run consecutive to a yet-to-be-imposed sentence

in Watson's other federal criminal case; and (3) this Court's denial of Watson's motion to

withdraw his guilty plea to Counts One (conspiracy) and Two (bank fraud).  *United*

*States v. Watson*, 883 F.3d 1033, 1035 (8th Cir. 2018)

On February 28, 2018, the Eighth Circuit affirmed this Court's judgment.  The

appellate court held that the evidence was sufficient to support Watson's conviction in

Count Eleven and rejected as a matter of law Watson's argument that the photocopied

---

[13]     The reasons for variance included Watson's extensive criminal history—28
criminal history points—history of committing new crimes while on supervision, and
practice of inducing others to participate in his schemes, as well as the need to protect the
public and deter Watson from engaging in similar illegal conduct.  Crim. ECF No. 374 at
72-74

Sher & Shabsin checks at issue in Count Eleven did not constitute a counterfeit making implement under 18 U.S.C. § 513(b).

The appellate court next held that Watson's challenge to this Court's decision to run his sentences consecutively was moot because the judge in Watson's other federal criminal case independently imposed a consecutive sentence and because "[t]he consecutive nature of the sentences [was] eminently reasonable given that [Watson's] additional criminal conduct was committed while he was in custody on the charges in this case." *Id.* at 1037.

Finally, the appellate court affirmed the denial of Watson's motion to withdraw his guilty plea to Counts One and Two, holding that Watson's "self-serving claim that he was confused about which checks corresponded to those counts [was] directly contradicted by his statements during his plea colloquy." *Id.* at 1038.

**Motion to Vacate**

In his § 2255 motion now before this Court, Watson asserts six claims of ineffective assistance of counsel and one claim of prosecutorial misconduct. Watson does not provide any explanation of his claims in his motion (ECF No. 1), but he includes a lengthy narrative with respect to each of his claims in a supporting memorandum attached to his motion (ECF No. 1-1). Watson filed his motion and supporting memorandum pro se, and although the Court appointed counsel at Watson's request thereafter, appointed counsel did not amend these pro se filings.

As best the Court can discern from Watson's memorandum, Watson asserts that defense counsel was ineffective for:

19

Ground 1: advising Watson to plead guilty to charges of which counsel knew or should have known that Watson could not be convicted, based on the evidence of record and/or on Watson's legal interpretation of the statutes at issue, and advising Watson to plead guilty to some charges while proceeding to trial on others even though all of the charges were directly related.

Ground 3: failing to file motions for an early disclosure of material subject to the Jencks Act,[14] 18 U.S.C. § 3500, and for the government to disclose evidence favorable to the Watson and impeachment material "in order to ensure such evidence being withheld by the government under the guise of it being Jencks material."  ECF No. 1-1 at 39.

Ground 4:  failing to review discovery and Jencks material in unredacted form in order to discover favorable evidence and assert *Brady* violations, in particular:

a.  Maryland Heights Police Officer Matt Schmitz's August 30, 2014 incident report, which does not mention any photocopies of checks with the name of Sher & Shabsin, P.C. among the items seized from Watson's vehicle, despite mentioning the company names listed on other checks seized from that vehicle, and a Secret Service report prepared by Special Agent Kristen Scowcroft, which stated that two Sher & Shabsin checks were seized from Watson's vehicle in connection with his arrest.[15]  *See* App'x, Disc. Docs., ECF No. 114-1 at pp. 1-7, 67-89.

---

[14]      "The Jencks Act requires a court to order the government, upon request by the defendant, to produce any statement in the government's possession which relates to the matter on which a witness called by the government has testified on direct examination."  *United States v. Benton*, 890 F.3d 697, 718 (8th Cir. 2018) (citing 18 U.S.C. § 3500(b)), *judgment corrected* (May 15, 2018).

[15]      Watson asserts that he received copies of the Sher & Shabsin checks along with Officer Schmitz's August 30, 2014 incident report during the discovery process prior to his plea and trial, but he does not know whether the copies of the checks were included in the incident report or were added to that report at some time after his arrest.

b.  Maryland Heights Police Officer Schmitz's July 28, 2014 incident report summarizing an interview of Lawanda Ledbetter in which Ledbetter described an assault earlier that day by Watson inside a white Chevy Suburban that Watson was operating; and Schmitz's August 30, 2014 incident report which states that Watson was found in a brown Chevrolet Suburban.  *See* App'x, Jencks Docs., ECF No. 116-1 at pp. 7-11; App'x, Disc. Docs, ECF No. 114-1 at pp. 67-72.

c.  St. Louis County Police Report dated April 5, 2016, summarizing an interview of D. Hill taken on March 29, 2016, in which D. Hill stated that she cashed a counterfeit check after a "black male she knows" asked her to do so and told her she would receive money in exchange, but D. Hill refused to name the black male.  *See* App'x, Jencks Docs., ECF No. 117-1 at pp. 2-8.

d.  St. Louis County Police Report dated March 4, 2015, summarizing an interview of Taylor following her arrest in which Taylor denied cashing a counterfeit check, requested a lawyer, and was not asked about and did not mention Watson.  *See* App'x, Jencks Docs., ECF No. 117-1 at pp. 37-39.

e.  Special Agent Scowcroft's report dated January 13, 2016, summarizing an interview of Taylor taken that day, in which Taylor stated that on November 1, 2015, a woman called Taylor and added Watson to the call as a three-way conference call, and that on the call, Watson asked Taylor to lie about crimes they committed.  Whereas the transcript of the call does not indicate that it was a three-way call.  *See* App'x, Jencks Docs., ECF No. 117-1 at p. 50.[16]

Ground 5: failing to argue that Count Four of the Original Indictment should have

been dismissed "due to there not being any counterfeit securities [bearing] the name

Tokio Marine Specialty Insurance Company" and failing to argue that Count  Eleven of

the Final Superseding Indictment (which changed the company name on the counterfeit

---

[16]     As part of his argument for Ground Four, Watson also challenges the sufficiency of the evidence supporting various sentencing enhancements,  including enhancements related to the loss amount, Watson's role in the offenses, the number of people involved in the conspiracy, and whether Watson was involved in the trafficking of an access device.

making template from Tokio Marine Specialty Insurance Company to Sher and Shabsin, P.C.) lacked sufficient evidence.

Ground 6: failing to seek to withdraw from representing Watson on direct appeal after Watson asked him to either withdraw and after counsel refused to assert all of the arguments that Watson wanted him to assert on appeal.

Ground 7: refusing to file motions requesting the recusal of the undersigned in Watson's criminal case and of Judge Perry in an earlier criminal case charging Watson with escape for an alleged conflict of interest.

Watson further asserts a claim of prosecutorial misconduct (Ground Two) on the ground that the prosecutor failed to disclose the allegedly favorable evidence described above, in violation of *Brady*, and allowed or encouraged  perjury during the grand jury proceedings and sentencing hearing.

Watson bases his claim regarding perjured testimony on the differences between the facts stated in the original indictment and superseding indictments, such as the change from the initials "J.F." to "M.S." as the name used during the bank fraud and the removal of any reference to "Tokio Marine Specialty Insurance Co."  Watson suggests that these changes indicate that there was insufficient evidence to support the original indictment and that grand jury testimony used to support the indictment must therefore have been perjured.

Watson further contends that Special Agent Scowcroft lied throughout the sentencing hearing when describing Watson's trafficking of an access device in the form of a debit card; when describing the seizure of evidence; when describing the statements

22

that D. Hill, S. Hill, and others made to law enforcement officers; and when stating that two Sher & Shabsin checks were seized from Watson's vehicle in connection with his arrest.

The government responds that, to the extent that Watson asserts claims based on alleged violations of the Jencks Act  or insufficiency of the evidence presented during trial and sentencing, such claims are not cognizable under § 2255 or have been procedurally defaulted, and should therefore be dismissed.  The government further asserts that each of Watson's claims is without merit.

Specifically, regarding Ground One, the government argues that the record establishes that Watson's guilty plea was knowing, voluntary, and intelligent, and that Newton's trial strategy in this regard was neither unreasonable nor prejudicial.  In an affidavit attached to the government's response, Newton attests that, prior to Watson's plea of guilty to certain charges, he discussed with Watson the benefits and disadvantages of the strategy to enter a partial guilty plea; and that these discussions included consideration of the evidence, the posture of the co-defendants, and the relevant case authority.

Regarding Grounds Three and Four, the government argues that no *Brady* violation occurred because it did not fail to timely disclose any evidence material and favorable to the defense and that a review of the Jencks Act material referenced by Watson reveals that it had no exculpatory value and minimal impeachment significance. The government further contends that it emailed unredacted copies of its trial evidence and its Jencks Act materials to Newton on November  3, 2016; that when Newton

informed the government he had not received the Jencks Act material, the government resubmitted that material on November 4, 2016; and that Newton received the Jencks Act material and reviewed the material with Watson in person in Warren County, where Watson was being detained pretrial, on November 6, 2016.  In support of these assertions, the government has submitted copies of the email correspondence between it and Newton, as well as Newton's affidavit attesting to these facts.  ECF No. 25-1 – No. 25-6. In his affidavit, Newton further attests that he reviewed and discussed all discovery provided by the government with Watson.  ECF No. 25-5.

As to Ground Five, the government argues that the Final Superseding Indictment did not include any count relating to the Tokio Marine Specialty Insurance Company check, and that any motion to dismiss such a count would therefore have been meritless.

Regarding Ground Six, the government contends that Watson never asserted a conflict of interest with Newton during the trial court proceedings or on direct appeal and that there was no reason for Newton to seek to withdraw from representing Watson on direct appeal.  The government further argues that Watson's alleged dissatisfaction with counsel for refusing to pursue Watson's desired trial or appellate strategy does  not constitute ineffective assistance of counsel and is also contradicted by Watson's statements during the plea colloquy that he was satisfied with his counsel.

As to Ground  Seven, the government argues that there was no basis to seek recusal  of any district court judges and that Newton was not ineffective for refusing to file a baseless motion.

Finally, regarding the prosecutorial misconduct claim in Ground Two, the government argues that no such misconduct occurred and that Watson's allegations of perjury and *Brady* violations are wholly unsubstantiated.

**Evidentiary Hearing**

The Court held an evidentiary hearing on Watson's § 2255 motion on March 10, 2021, in person at Watson's request.  Watson and his appointed counsel appeared, and the Court heard testimony from Newton and Watson.  The evidentiary hearing focused on Watson's claims regarding (1) Newton's advice to Watson to plead guilty to some but not all counts and to stipulate to facts underlying other counts; (2) Newton's decisions not to seek to suppress, assert a *Brady* violation with regard to the Sher & Shabsin checks, or otherwise challenge the government's assertion that the Sher & Shabsin checks were in fact possessed by Watson and recovered from Watson's vehicle as part of the August 30, 2014 search by Maryland Height Police officer Schmitz; (3) Newton's decision not to assert a *Brady* violation with respect to police interviews of co-conspirators D. Hill or Taylor, which were not disclosed to Newton and Watson until day before or morning of trial, as part of the government's disclosures under the Jencks Act; and (4) Newton's decision not to call various witnesses whom Watson allegedly asked Newton to call at the bench trial.

## DISCUSSION

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief from a sentence imposed against him on the ground that "the sentence was imposed in violation of the Constitution or law of the United States, or that the court was without jurisdiction to

impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."   28 U.S.C. § 2255.  An ineffective assistance of counsel claim is properly raised under 28 U.S.C. § 2255 rather than on direct appeal.  *United States v. Davis*, 452 F.3d 991, 994 (8th Cir. 2006).

## Ineffective Assistance of Counsel

In order to prevail on an ineffective-assistance-of-counsel claim, a habeas petitioner must meet the two-prong test established by *Strickland v. Washington*, 466 U.S. 668 (1984): (1) he "must show that counsel's performance was deficient," so deficient that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," and (2) he must show "that the deficient performance prejudiced the defense."  *Strickland*, 466 U.S. at 687, 690, 694.  In measuring counsel's performance, courts apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id*. at 689 (citation omitted).

Prejudice in the context of a guilty plea requires the petitioner to show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  Prejudice in the trial or sentencing context requires the petitioner to show a reasonable probability that result of the proceeding would have been different but for the deficient performance.  *See Coleman v. United States*, 750 F.3d 734, 739 (8th Cir. 2014) (sentencing).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome or a substantial, not just conceivable, likelihood of a different

26

result." *Meza-Lopez v. United States*, 929 F.3d 1041, 1044-45 (8th Cir. 2019) (citation omitted).

"Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Id.*, at 1045 (citing *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017)). "Instead, judges should look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* In particular, a "defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Adams v. United States*, 869 F.3d 633, 635 (8th Cir. 2017) (citation omitted).

Applying these standards, each of Watson's claims of ineffective assistance fail.

a. Advice Regarding Partial Plea and Factual Stipulations (Ground 1)

From a review of the evidence, and after having an opportunity to observe the demeanor of the witnesses at the evidentiary hearing, the Court finds that Watson's assertion that he was not adequately informed of the risks and benefits of his chosen plea strategy is not credible. Rather, Newton credibly testified at the evidentiary hearing that Watson was among the most sophisticated of his clients and that Watson was in constant contact with and took the lead with respect to trial strategy. This Court's own observation of Watson during the criminal proceedings—in particular, at the change of plea hearing, bench trial, and hearing on Watson's motion to withdraw his guilty plea— as well as during these § 2255 proceedings and the evidentiary hearing, cements the Court's conclusion that Watson's partial plea and trial strategy was the product of his

27

own wholly voluntary and fully informed decisions.

The strategy was also a sound one, and counsel's advice to follow that strategy fell well within the bounds of reasonable professional conduct. Indeed, the issue of whether the government could prove that the checks and photocopied checks at issue could qualify as a counterfeit security and counterfeit making "implement," respectively, under the relevant statutes were close calls and required this Court and the Eighth Circuit on appeal to resolve novel questions of law. That the questions were ultimately resolved in the government's favor does not render counsel's assistance ineffective. *See, e.g.*, *Lemon v. United States*, 335 F.3d 1095, 1096 (8th Cir. 2003) ("Lemon's counsel made the decision to stipulate as part of a reasonable trial strategy in which counsel sought to disprove the element of possession rather than the drug type.").

By contrast, a factual defense was likely to fail in light of the overwhelming evidence against Watson. Watson highlights various initial statements of his co-conspirators, D. Hill and Taylor, that did not identify Watson by name and on S. Hill's motion to dismiss for vindictive prosecution filed on June 14, 2016, in which S. Hill suggested that the prosecutor was retaliating against her for refusing to testify against Watson. But by the time of Watson's trial on November 7, 2016, these co-conspirators had entered guilty pleas and other pretrial agreements that expressly implicated Watson in the crimes at issue. Thus, Newton's advice and Watson's decision to stipulate to the factual bases of those crimes and focus on a legal defense were manifestly reasonable.

Nor can Watson demonstrate prejudice. Watson offers little more than post hoc assertions regarding his decision to plead guilty to some counts and proceed to trial on

others.  As this Court previously held in denying Watson's motion to withdraw his guilty

plea, and as the Eighth Circuit affirmed, Watson's conduct and statements during the plea

colloquy clearly demonstrate that he entered the plea of his own free will and fully

understood the consequences of his chosen plea and trial strategy.

    b.  <u>Failure to Discover and to Assert Alleged *Brady* Violations (Grounds 3 &4)</u>

        Newton could not have been ineffective for failing to assert a *Brady* violation

because no *Brady* violation occurred here.  "To establish a *Brady* violation, a defendant is

required to show that: (1) the prosecution suppressed evidence; (2) the evidence was

favorable to the defendant; and (3) the evidence was material."  *United States v. Tate*, 633

F.3d 624, 630 (8th Cir. 2011).

        As to the first element, the due process concerns addressed by *Brady* are satisfied

"if the information is furnished before it is too late for the defendant to use it at

trial."  *United States v. Szczerba*, 897 F.3d 929, 941 (8th Cir. 2018) (citation omitted).

Thus, to establish a *Brady* violation based on the government's delay in disclosing

evidence, the movant must show that the delay "deprived him of [the evidence's]

usefulness and that this deprivation materially affected the outcome of his trial."  *Id.*

        As to the remaining elements, evidence may be favorable to the defendant if it is

exculpatory or tends to impeach government witnesses.  *United States v. Baez*, 983 F.3d

1029, 1044 (8th Cir. 2020).  "Evidence is material only if there is a reasonable probability

that, had the evidence been disclosed to the defense, the result of the proceeding would

have been different..*"  *United States v. Ruzicka*, 988 F.3d 997, 1006 (8th Cir.

2021) (citation omitted). "A reasonable probability is a probability sufficient to

undermine confidence in the outcome" of the proceeding." *Id.*  "To decide if impeachment evidence is material, we examine the record as a whole because the relative strengths of the prosecution's case and the impeachment value of the undisclosed evidence bear on whether disclosure in time for use at trial would have made a difference." *United States v. Chappell*, 990 F.3d 673, 679 (8th Cir. 2021).

Watson cannot prove any of these elements.  Watson's own testimony at the evidentiary hearing and his letters to counsel reveal that he was aware of much, if not all, of the evidence he describes as *Brady* material in enough time to make use of it at trial. For example, Watson testified at the § 2255 evidentiary hearing that he asked Newton to file pretrial motions to suppress evidence or dismiss the indictment because of discrepancies he had discovered between the Maryland Heights Police report and Secret Service report regarding whether the Sher & Shabsin checks were found in his vehicle.[17] *See* Evid. Hrg. Tr., ECF No. 170 at 122-25.  Thus, Watson admitted that he was aware of the underlying purported *Brady* material in plenty of time to make use of it at trial.

But even if the evidence were not timely disclosed, none of the evidence cited by Watson was either favorable or material to his case.  For example, the fact that the Sher & Shabsin checks were not referenced by name in the August 30, 2014 Maryland Heights Police report does not establish that those checks were not in fact found in Watson's vehicle.  Indeed, the report indicates that, aside from the enumerated items, "misc.

---

[17]    Likewise, Watson's pretrial motions, such as his motions to sever his trial from that of his co-defendants, indicate that Watson had reviewed some, if not all, of the witness statements well in advance of trial. *See, e.g.*, Crim. ECF No. 131 at 3 (discussing co-defendants S. Hill and D. Hill's statements that were provided in discovery).

papers" were found in Watson's vehicle, and the report attaches photocopies of two Sher
& Shabsin checks.

Moreover, Watson stipulated to the authenticity of the Sher & Shabsin checks at
issue at the change of plea hearing and bench trial.  It is undisputed that Officer Schmitz
was prepared to testify at the bench trial regarding the origin of the checks, and Newton
credibly testified at the evidentiary hearing that he would not have waived any objection
to the authenticity of those checks without Watson's specific approval.  As the Court
previously noted in denying Watson's motion to withdraw his guilty plea, and as the
Eighth Circuit affirmed on Watson's direct appeal, the record establishes that Watson
was well versed in the contents and origin of each of the checks at issue and, had there
been any question as to whether the Sher & Shabsin checks were in fact recovered from
Watson's vehicle, he would have raised the issue.

Likewise, any discrepancy in descriptions of the color of Watson's car in various
police reports would not have been favorable to Watson in light of the evidence that
Watson had access to multiple cars.  *See* Evid. Hr'g Def.'s Ex. 6, ECF No. 179-6 at 4.

Neither did the early statements of Watson's co-conspirators constitute favorable
impeachment evidence.  For example, in her initial interview, Taylor denied any
involvement in the criminal conduct, so she could not have named Watson without
implicating herself.  For her part, D. Hill described Watson physically even in her initial
statement by stating that a black man was involved in the crimes.  That she refused to
provide police with Watson's name initially does not undermine her credibility.  *See*
*United States of Am. v. Pendleton*, 832 F.3d 934, 941 (8th Cir. 2016) (holding that any

31

inconsistency between conspirators' initial statements to police that did not implicate the defendant and later statements naming him as a key player did not fall under *Brady*).

Regarding evidence of Taylor's suggestion in an interview with Scowcroft that the jail call with Watson that formed the basis of the witness tampering charge was a three-way call, notwithstanding that the audio recording and transcript of that call indicates it was a two-way call between Taylor and Watson only, such evidence has no impeachment value.  The fact that the call was not a three-way call does not undermine contents of the call, the audio and transcript of which plainly demonstrate that Watson tampered with this witness.

Finally, besides being unfavorable to Watson, all of the evidence highlighted by Watson is immaterial.  Based on Newton's credible testimony at the evidentiary hearing and the Court's review of the record, it is clear that Watson pored through all of the evidence, including the witness statements provided on the eve of trial as part of the Jencks Act material, and that he understood the impact of this material before he chose to enter his guilty plea to certain counts and proceed to trial on others.  Any assertion that he would not have pled guilty had he received some of this material earlier is not credible. There is also no reasonable probability that the outcome of the bench trial would have been different had any of this evidence been disclosed earlier, particularly in light of the overwhelming evidence of Watson's guilt.

c.  Failure to File Certain Pretrial Motions (Grounds 5 & 7)

Watson's claims regarding Newton's failure to file various pretrial motions, such as motions to dismiss the indictment or motions for recusal of the undersigned or Judge

Perry, are all without merit.  Watson has not shown that any of these motions would have been successful.  As the government correctly notes, the Final Superseding Indictment did not include any count relating to the Tokio Marine Specialty Insurance Company check, so Newton could not have sought to dismiss such a count.  And there was more than sufficient evidence to convict Watson on the counts of which he was actually convicted and to which he pled guilty.  Likewise, Watson has not shown any basis for the recusal of the judges who presided over his criminal cases.

### d.  Failure to Call Alibi Witnesses

To the extent Watson claims that Newton was ineffective for failure to call certain alibi witnesses at trial,[18] the claim lacks merit.  Watson has not provided evidence, as opposed to speculation, as to what these witnesses would have testified to or demonstrated that their testimony would have altered the outcome of the proceedings, particularly in light of the evidence against Watson.

### e.  Failure to Withdraw

As the government correctly notes, despite filing countless pro se motions and memoranda while represented by counsel, never once did Watson assert a conflict of interest with Newton during the trial court proceedings or on direct appeal that would require Newton to withdraw from representing Watson.  Watson would have had to demonstrate "a conflict of interest, an irreconcilable conflict, or a complete breakdown in

---

[18]     Watson's appointed counsel and the government argue such a claim in their pre- and post-hearing briefs, but it is not clear from Watson's lengthy pro se § 2255 motion under which Ground such claim is asserted.

communication between the attorney and the defendant" to warrant a motion to withdraw.  *See United States v. Swinney*, 970 F.2d 494, 499 (8th Cir. 1992).  Watson failed to demonstrate such a conflict.  To the contrary, he consistently represented during the trial court proceedings that he was satisfied with his attorney.

### Prosecutorial Misconduct (Ground 2)

With respect to Ground Five, "[t]he test for reversible prosecutorial misconduct has two parts: (1) the prosecutor's . . . conduct must in fact have been improper, and (2) such . . . conduct must have prejudicially affected the defendant's substantial rights so as to deprive him of a fair trial."  *United States v. Rodriguez*, 612 F.3d 1049, 1055-56 (8th Cir. 2010)

a. Alleged *Brady* Violations

As discussed in detail above, Watson has not established any *Brady* violation in this case.

b. Alleged Perjury

Essentially all of Watson's claims of prosecutorial misconduct stem from his belief that the government witnesses lied in grand jury proceedings and at trial.  "[T]he prosecution may not use or solicit false evidence, or allow it to go uncorrected." *United States v. Martin,* 59 F.3d 767, 770 (8th Cir.1995). "To prove prosecutorial use of false testimony, [Watson] must show that" (1) the prosecution used perjured testimony; (2) the prosecution knew or should have known of the perjury; and (3) there is a 'reasonable likelihood' that the perjured testimony could have affected the jury's judgment. *Id.* Here, Watson has no actual evidence of any perjury. In some instances, Watson

mischaracterizes various transcripts and documents, some of which relate to dismissed charges, in an attempt to prove that witnesses were lying.  In other instances, Watson merely points out inconsistencies in various witness statements.  But "[m]ere inconsistency between witnesses' testimony is not necessarily perjury, and not every contradiction is material.  A challenge to evidence through another witness or prior inconsistent statements is insufficient to establish prosecutorial use of false testimony." *Id.* (citation omitted).

In short, although Watson's various pro se supporting and reply briefs—many of which were filed notwithstanding the Court's directive that all filings must be through appointed counsel—consist of hundreds of pages of Watson's speculations, they still fail to put forward even a scintilla of evidence establishing that any witness lied before the grand jury or at trial or that the government knowingly assisted in or condoned perjury. Watson's allegations are not made any less baseless just because he repeats them again and again.  Nor is there any reasonable likelihood that the inconsistencies in witness statements highlighted by Watson would have affected the judgment in this case.

**Remaining Claims**

To the extent that Watson asserts claims regarding the sufficiency of the evidence supporting his convictions or sentencing enhancements, such claims are procedurally defaulted if they could have been but were not raised on direct appeal.  *See Bousley v. United States*, 523 U.S. 614, 622 (1998).  In any event, they are without merit.  There was more than enough evidence against Watson on the crimes of which he was convicted, the sentencing enhancements imposed were supported by the evidence and the law, and as

the Court noted at sentencing, it would have imposed the same sentence even if it had sustained Watson's objections to those enhancements.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Pierre Watson's motion filed under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence is **DENIED**.

**IT IS FURTHER ORDERED** that this Court will not issue a Certificate of Appealability as Petitioner has not made a substantial showing of the denial of a federal constitutional right as required by 28 U.S.C. § 2253(c)(2).

A separate Judgment shall accompany this Memorandum and Order.

.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 4th day of August, 2021.